# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 12-312V
(To be Published)

* * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| K.L., | * | |
| | * | Filed:  December 8, 2014 |
| Petitioner, | * | |
| | * | Special Master Corcoran |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH AND | * | |
| HUMAN SERVICES, | * | Decision; Interim Fees and Costs; |
| | * | Grounds for Denying Interim Fee |
| Respondent. | * | Award Request |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

*Paul Dannenberg*, Huntington, Vt., for Petitioner

*Lynn Ricciardella*, U.S. Department of Justice, Washington, D.C., for Respondent

## Decision Denying Interim Attorneys' Fees and Costs Award[1]

On May 11, 2012, K.L. filed this action seeking compensation under the National Vaccine Injury Compensation Program (the "Program").[2] ECF No. 1, dated May 11, 2012 (Original Petition) and 24, dated Mar. 11, 2013 (Amended Petition). Petitioner alleges that she suffered a variety of injuries (including partial onset epilepsy, seizures, and migraine headaches) as a result of the human papillomavirus ("HPV") vaccinations she received between May 2009 and February 2010. *Id.* at 1. The case is not yet resolved, but Petitioner now seeks an interim fee award on behalf of her attorney, Paul Dannenberg, arguing that the case's age plus the tasks her counsel and expert

---

[1] Because this decision contains a reasoned explanation for my action in this case, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id.*

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2006) (the "Vaccine Act" or the "Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa (2006).

have performed to date justify interim payment of fees. In the exercise of my discretion, and after review of the case's procedural history, I find that an interim fee award is not presently justified.

**Procedural Background**

Ms. L's Petition alleges, with little elaboration, that she "received HPV/Gardasil vaccinations on May 18, 2009, August 18, 2009, and February 9, 2010," and that she "was injured as a result of receiving these vaccinations." *See, e.g.*, Amended Petition at 1. The Petition specifically alleged that Ms. L "ha[d] been diagnosed with seizure disorder with profound and prolonged post ictal state" and "suffered the residual effects of such injury for more than six months after administration of the vaccines." *Id.* at 1-2. It did not, however, specify when the onset of her illness began. *Id.*

After initiating this action in May 2012, Ms. L began filing medical records in support of her claim. Petitioner filed her first four exhibits, plus an affidavit, by compact disc on June 25, 2012. ECF No. 8. Her next eight exhibits were filed in October of that same year. *See* October 26, 2012 Notice (ECF No. 12). That filing contained a statement of completion indicating that, in Petitioner's view, the records were complete with the exception of updated treatment information. *Id.* After Respondent filed a status report in November 2012 indicating that relevant materials were still missing (ECF No. 13), Petitioner filed a third compact disc on February 22, 2013 (ECF No. 20) containing Exhibits 13-17. The final two exhibits were filed on February 25, 2013 (Pet'r's Ex. 18 (ECF No. 21)) and May 31, 2013 (Pet'r's' Ex. 19 (ECF Nos. 28-29)). The total medical records submitted by Petitioner during this twelve-month period comprised less than three hundred and fifty individual pages of records.

During the same period of time, Petitioner obtained several enlargements of time in which to complete the record-gathering process. She asked for one extension of time by motion (*see* ECF No. 10 (September 26, 2012 Motion)), and was also provided several informal extensions after status conferences with the special master formerly responsible for this action. *See, e.g.*, June 28, 2012 Scheduling Order (ECF No. 9); Dec. 11, 2012 Scheduling Order (ECF No. 16); Jan. 29, 2013 Scheduling Order (ECF No. 19); Mar. 12, 2013 Scheduling Order (ECF No. 25). Respondent ultimately agreed to file her Rule 4(c) Report despite the fact that the record filing was not complete. *See* Apr. 11, 2013 Status Report (ECF No. 27).

Respondent's Rule 4(c) Report was filed in June of 2013. ECF No. 30. Thereafter, the special master ordered Petitioner to file a damages affidavit in July, followed by a status report in August identifying an expert and proposing a date for filing of an expert report. *See* June 17, 2013 Scheduling Order (ECF No. 31). Petitioner then filed additional motions for an extension of time with respect to both tasks, and both of these motions were granted. *See* ECF No. 32, 34. After obtaining an extension of time until October to identify an expert, Petitioner requested yet another extension in which to do so (until December 2013). ECF No. 37. This deadline the Petitioner met,

2

and the special master set March 21, 2014 as the deadline for Petitioner's expert report. ECF No. 42.

In 2014, Petitioner filed four more motions for extensions of time – three of which specifically pertained to her deadline to file an expert report. *See* ECF No. 45, 47, 50, 53. Eventually, however, petitioner did file an expert report in mid-June of 2014. ECF No. 54. Since then, Ms. L has filed some additional medical records and medical literature (ECF No. 55-56) before filing the present interim fees petition on September 24, 2014 (ECF No. 57) ("Interim Fee Petition").

### The Interim Fee Petition and Respondent's Objections

Ms. L is requesting fees and costs totaling $50,210.69, for work performed on this matter between July of 2010 and the present date. Interim Fee Petition at 5. Fees include work performed by her primary counsel, Paul Dannenberg, along with two additional attorneys who have assisted him in this matter to date. Pet'r's' Exs. 1-4. All of these attorneys have performed their work in the State of Vermont and the hourly rates they base the fee petition upon are calculated based on the "forum rate."[3] The total requested sum also includes $4,346.69 in costs, $3,500 of which represents a retainer fee for Petitioner's expert, Dr. Beatrice Engstrand. Interim Fee Petition at 3, 4.

---

[3] Under the Vaccine Act, the lodestar approach is utilized when making determinations regarding what constitutes reasonable attorneys' fees. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008). When utilizing this approach, the first step is to multiply the number of hours that a petitioner's attorney could have reasonably expended on the litigation by a reasonable hourly rate. *Id.* at 1348. In *Avera*, the Federal Circuit indicated that the "forum rate" (meaning the location of the relevant court) should generally be utilized when calculating the reasonable hourly rate. *Id.* at 1349. The Court of Federal Claims is located in Washington, D.C. and has exclusive jurisdiction over cases brought under the Vaccine Act; therefore, the relevant forum in vaccine cases is always the District of Columbia.

There is a limited exception to the forum rule, in cases where the bulk of an attorney's work is performed outside of the forum, where there is a "very significant difference" in compensation between the forum rate and the local rate, and where the forum rate is higher than the local rate. *Davis County Solid Waste Mgmt. & Energy Recovery Spec. Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999) (concluding that, under the circumstances in the case, the difference between the local rate and the forum rate was "very significant" when the forum rate was approximately fifty percent higher than the local rate). Under such circumstances, the reasonable hourly rate for the attorneys' fees award should be calculated downward utilizing the lower local rate. *Id*. at 759-60

Here, besides calculating attorneys' fees based on the forum rate, Ms. L also offers her calculation of the same fees based on a local billing rate (for Vermont) which produces a somewhat lower total request ($42,566.69). However, Petitioner argues that the higher forum rate should be adopted herein, because (based on two submitted affidavits from attorneys practicing in Vermont) there is a very significant difference in counsel's local rate of $300 per hour, and the forum rate of $360 per hour, and therefore the *Davis County* exception should not apply. Interim Petition at 2 (citing *Schueman ex rel. Schriver v. Sec'y of Health & Human Serv.*, No. 04-693V, 2010 WL 3421956 (Fed. Cl. Aug. 11, 2010)).

Respondent filed a pleading responding to the interim fees and costs petition on October 30, 2014. *See generally* ECF No. 60 ("Opp."). She asserts that the matter is not sufficiently "protracted" to justify an interim award – especially given that (as recounted in her version of the procedural history) the length of the litigation is attributable to repeated extensions of time requested by Petitioner. Opp. at 6. She also questioned whether any other circumstances specific to this matter (such as the fact that Petitioner has chosen to utilize an expert) justify an interim fee award under the legal standards applicable to such a request. *Id.* at 8. And she contests Petitioner's assertion that denial of an interim award will cause "undue hardship." *Id.*[4]

Petitioner replied to Respondent on November 4, 2014. ECF No. 61 ("Reply"). She asserts that in a "long-running and expensive" case such as the present, an interim fee award is appropriate. Reply at 1. She explains that delay has been attributable to the difficulty in obtaining medical records, arguing this is a fact of life in Vaccine Program cases well understood by Respondent. *Id.* at 2-3. She also claims that her counsel's small legal practice will be prejudiced should an interim award be denied. *Id.* at 2. The matter is now ripe for adjudication.

**Analysis**

I.   *General Principles Regarding Attorneys' Fee Awards*

Relevant Federal Circuit precedent[5] clearly permits the recovery of interim fees and costs in Vaccine Program cases. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008); *see also Cloer v. Sec'y of Health and Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012), *aff'd sub nom., Sebelius v. Cloer*, 133 S. Ct. 1886 (2013); *McKellar v. Sec'y of Health and Human Servs.*, 101 Fed. Cl. 297, 302 (2011) ("interim fees are permitted even before an entitlement decision is made"). *Avera* is often viewed as the seminal case addressing the general propriety of interim fee awards, and in it the Federal Circuit discussed the kinds of conditions under which an interim fee award may be appropriate, such as "where proceedings are protracted and costly experts must be retained." *Avera*, 515 F.3d at 1352. Yet *Avera* did not define the precise circumstances in which an interim award is warranted, leading other special masters to observe that the standards for granting an interim fee award "remain somewhat muddled." *Small v. Sec'y of Health & Human Servs.,* No. 02-1616V, 2014 WL 308297, at *1 (Fed. Cl. Spec. Mstr. Jan. 7, 2014), *citing Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1375 (Fed. Cir. 2010).

---

[4] In addition, and in accordance with my prior direction, Respondent has discussed with Petitioner's counsel what total figure and attorney fee rate she would accept if I grant the request for interim fees, and sets forth her position in her Opposition. *See* Opp. at 8-9. Because I find that an interim fee award is not justified, however, I do not address issues pertaining to the proper calculation of such an award.

[5] In this decision, I reference or rely upon both the decisions of special masters as well as the judges of the Court of Federal Claims, all of which constitute persuasive, but not binding authority. *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998). By contrast, Federal Circuit decisions are binding on special masters. *Guillory v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 121, 124 (2003), *aff'd*, 104 Fed. App'x 712 (Fed. Cir. 2004).

4

At a minimum, special masters have broad discretion in determining whether to award interim fees. *See, e.g., Kirk v. Sec'y of Health & Human Servs.,* No. 08-241V, 2009 WL 775396, at *1 (Fed. Cl. Spec. Mstr. Mar. 13, 2009) (reading *Avera* to set a "broad, discretionary vehicle for ensuring that petitioners are not punished financially while pursuing their vaccine claim"); *Bear v. Sec'y of Health & Human Servs.,* No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013) (*Avera* provides only "examples and general guidance concerning when interim fees and costs might be awarded, leaving the special masters broad discretion to consider many factor in considering whether an interim award is appropriate in a particular case"). And as noted in *Small*, "[i]t is clear that interim fees and costs need not be awarded in all circumstances." *Small*, 2014 WL 308297, at *1; *see also Fester v. Sec'y of Health & Human Servs.,* No. 10-243V, 2013 WL 5367670, at *8 (Fed. Cl. Spec. Mstr. Aug. 27, 2013) (petitioner must still demonstrate appropriateness of interim award even if other criteria for fee award[6] can be met).

Interim fee awards have been granted after taking into account the amount of time that has passed in a case as well as the amount of work performed. *See, e.g., Franklin v. Sec'y of Health & Human Servs.,* No. 99-0855V, 2009 WL 2524492, at *4 (Fed. Cl. Spec. Mstr. July 28, 2009) (awarding interim fees where the petition had been pending for years, petitioner's counsel had paid significant amounts to experts, and the final resolution of the case was likely to take some time). But there is no defined period of time that must have passed since the filing of a petition to justify an interim fee award. *See, e.g., Bear*, 2013 WL 691963, at *4-5 (interim fee award allowed when petition had been pending for only nineteen months); *Broekelschen v. Sec'y of Health & Human Servs.,* No. 07-137V, 2008 WL 5456319, at *2-3 (Fed. Cl. Spec. Mstr. Dec. 17, 2008) (interim fee award granted with respect to case pending for less than one year).

Interim fee and costs requests have also been denied in a variety of circumstances. In *Fester*, for example, a special master denied a *pro se* petitioner's request for an interim cost award intended to pay a retainer fee that an expert required before she would agree to assist the petitioner. 2013 WL 5367670, at *20. Although the *Fester* decision turned on the finding that it was not appropriate to fund costs not yet "incurred," it thoroughly evaluated the relevant legal standards and underscored the special master's discretion in awarding *any* interim fees or costs. *Id.* at *7-8. In *Heinzelman v. Sec'y of Health & Human Servs.,* No. 07-01V, 2012 WL 1119389 (Fed. Cl. Spec. Mstr. Mar. 13, 2012), a special master denied an interim fee award to a successful petitioner who

---

[6] As a general matter, the Vaccine Act specifically provides that successful petitioners are entitled to an award of reasonable attorneys' fees and costs. § 15(e). But even unsuccessful petitioners can recover attorneys' fees and costs. *Fester*, 2013 WL 5367670, at *6 (citations omitted). A requesting unsuccessful petitioner must demonstrate that his petition was filed in good faith and had a reasonable basis. *Small*, 2014 WL 308297, at *1 (citing *Perreira v. Sec'y of Health & Human Servs.,* No. 90-847V, 1992 WL 164436, at *1 (Cl. Ct. June 12, 1992), *aff'd*, 27 Fed. Cl. 29 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994)). Ultimately, it is the Petitioner's burden to demonstrate that requested attorneys' fees are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 215 (2009); *Rupert v. Sec'y of Health & Human Servs.*, 52 Fed. Cl. 684, 686 (2002). The same burden applies to justifying requests for an award of costs. *Perreira*, 27 Fed. Cl. at 34.

requested that her attorneys' fees be paid during the pendency of appeal. Relying on the 2011 *McKellar* decision of the Court of Federal Claims as having reemphasized that interim fees should not be assumed appropriate in all cases, the special master denied petitioner's request despite having granted two prior interim fee requests in the same matter. *Heinzelman,* 2012 WL 1119389, at *1-2. The third request, the special master reasoned, did not possess the same force of necessity as the prior two, and therefore should be denied. *Id.* at *5.

## II. *Appropriateness of Interim Fee Award in This Case*

This action is just over two years old. It was only in June of this year that Petitioner filed an expert report (Pet'r's Exs. 23-24 (ECF No. 54)), and then in July of this year when Petitioner filed the medical literature relied upon by her expert ((Pet'r's Exs. 25-27) (ECF No. 55)). Having reviewed the case's procedural history as well as Petitioner's various billing records and invoices submitted in support of her fee request, I do not find that an interim fee award is appropriate.

First, the case's age does not support Petitioner's assertion that proceedings have been notably protracted. Petitioner's counsel, Mr. Dannenberg, represents that he has labored on the case for four years – and yet the billing records reveal that he charged his client for less than fifteen hours of attorney time prior to filing the action in May 2012, suggesting that the case did not in fact take up a large part of his time to prepare. Ex. 3 to Interim Fee Petition at 1-2.

A case that was truly protracted would also feature some kind of litigation-related difficulties – and yet in this case Ms. L devoted almost the first year of the action merely to filing medical records. *See, e.g.*, April 12, 2013 Order (ECF No. 27) (indicating that Respondent had agreed to file her Rule 4(c) Report despite the fact that Petitioner was still in the process of filing medical records in this case). The obtaining and filing of records in any Program case can be time-consuming, especially if healthcare providers resist complying with requests for such records, and is a compensable task. But in this case, it does not appear that this process was especially difficult or unusual – and the fact that it was not completed until almost a year after the case was filed greatly undercuts Mr. Dannenberg's assertions about toiling over this case for years and years. It certainly seems as if the records-gathering process could have been addressed in the two years before the case was filed. (Indeed, this would have enabled Petitioner to comply with the Vaccine Act's statutory requirement that a petitioner file his or her medical records as part of the petition. *See* Vaccine Rule 2(c)(1). A petition is by definition incomplete until the statutorily required medical records are filed.)

Second, it is readily evident from review of the procedural record that the Petitioner has had a hand in delaying the matter. Since the time of the Petition's filing in May 2012, Ms. L has requested, and been granted, numerous enlargements of time: (i) two extensions of time to file medical records (ECF No. 9, 11) ; (ii) an extension of time to file a damages affidavit (ECF No. 33); and (iii) *six* extensions of time to file her expert report (four of which she expressly requested

by motion) (ECF No. 37, 45, 50, 53). Petitioner is correct that in Program cases both sides often seek enlargements of time as a professional courtesy,[7] but this fact does not excuse Petitioner's repeated self-inflicted delays, or lessen the extent to which they undercut Petitioner's argument that the case is otherwise protracted. To repeatedly delay a case and then ask for fees expressly on account of the case's excessive age is the essence of chutzpah.[8]

Finally, nothing about Petitioner's experience with her expert suggests that an interim award is appropriate under the circumstances. In early 2014, the special master formerly presiding over this case promulgated an order establishing guidelines for the form and content of expert reports in this action,[9] and conceivably those requirements might have proven difficult to meet given their extensive nature. But Petitioner's actual expert report (filed six months after the Order establishing the contents of the report (ECF No. 42, Appendix A)), and after three motions to extend the time to file it (EFC No. 45, 50, 53) is itself brief by Program standards, and appears minimally (if adequately) compliant with that Order. *See* Expert Report of Beatrice C. Engstrand, M.D. (ECF No. 54). In addition, the total expert-related costs Petitioner has incurred to date are fairly modest ($3,500) (ECF No. 62), and do not reflect extra work performed in order to comply with the previously-mentioned expert Order. There is nothing evident from the existing record to suggest to me that Petitioner's expert has created difficulties for Ms. L in prosecuting this action.

Based on all of the above, I do not find that an interim fee award is presently appropriate. The case has not been notably litigious or difficult to prosecute. *McKellar*, 101 Fed. Cl. at 300 ("some special showing is necessary to warrant interim fees, including but not limited to the delineated factors of protracted proceedings, costly experts, or undue hardship"); *Doe/11 ex rel. Child Doe/11 v. Sec'y of Health & Human Servs.*, 89 Fed. Cl. 661 (2009). The magnitude of fees

---

[7] In making this argument, Petitioner admits that Respondent for her part has not to date sought any time extensions in this case. She does refer to one instance in October 2013 when her counsel's e-mail to Respondent's counsel resulted in an automatic reply indicating that "due to a lapse in Department of Justice appropriations" Respondent could not substantively reply to the first e-mail. Reply at 3 n.2. Of course, that "lapse in appropriations" from last year was the 2013 federal government shutdown, an event that temporarily defunded the Department of Justice, making it impossible for its trial attorneys to work on their cases. Such a rare occurrence, and any inconvenience it resulted in, is hardly equivalent to Petitioner's dilatory conduct herein; indeed, it was in October 2013 that Petitioner made one of her six requests to extend her expert report filing deadline, and that request had nothing to do with Respondent's availability. *See* ECF No. 37.

[8] As the Court of Appeals for the Second Circuit has noted, "[t]he "classic definition" of chutzpah is "that quality enshrined in a man who, having killed his mother and father, throws himself on the mercy of the court because he is an orphan." *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 129 n.5 (2d Cir. 2009).

[9] The special master's Order indicated that the submitted "expert's report w[ould], most likely, constitute the expert's testimony on direct examination," rather than having the lawyer for the party who retained the expert conduct a direct examination of the expert as would otherwise be done in a Program entitlement hearing. Order Regarding Expert Reports (ECF No. 42, Appendix A). For this reason, the Order set forth a comprehensive list of topics that comprised the minimum information necessary for inclusion in the expert's report. *Id.* at 2-6.

requested is not small, but also consistent with awards that petitioners receive (whether successful or not) at the conclusion of cases that last as long or longer with the same kinds of procedural occurrences. *See, e.g.*, *Mears v. Sec'y of Health & Human Servs.*, No. 10-816, slip op. at 2-3 (Fed. Cl. Spec. Mstr. Jan. 10, 2014) (awarding $50,000 in attorneys' fees and costs, following the issuances of a damages decision, over three years after the initial petition was filed). Nor are there present any of the other kinds of special circumstances – counsel's withdrawal, for example – that often lead special masters to conclude an interim fee award is justified. *See, e.g.*, *Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (2012) (affirming the special master's award of attorneys' fees when the counsel withdraws); *Lumsden v. Sec'y of Health & Human Servs.*, No. 97-588V, 2012 WL 1450520, at *6 (Fed. Cl. Spec. Mstr. Mar. 28, 2012) (awarding interim attorneys' fees when petitioner's attorney was withdrawing from the case). It simply is not evident to me that it would work an undue hardship on the Petitioner to deny her interim fee request at this time.

In arriving at my decision, I make no determination as to the appropriateness of a fees and costs award after the case is resolved – regardless of the outcome. And should circumstances in this matter change such that the grounds for an interim fee award become stronger, I will reconsider this ruling. In either case, Petitioner may incorporate the elements of the present fee request (supplemented by any additional fees and costs incurred in this matter) in any such final or renewed request.

## CONCLUSION

For the reasons set forth above, I hereby determine than an interim fee award is not appropriate at this time, and I therefore DENY the petition.

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master