# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 12-312V
(not to be Published)

* * * * * * * * * * * * * * * * * * * * * * * *
K.L.,                                              *
                                                   *
                                                   *   Filed: March 7, 2018
                Petitioner,                        *
                                                   *   Attorney's Fees and Costs. Decision
        v.                                         *
                                                   *
SECRETARY OF HEALTH AND                            *
HUMAN SERVICES,                                    *
                                                   *
                Respondent.                        *
                                                   *
* * * * * * * * * * * * * * * * * * * * * * * *

*Paul S. Dannenberg*, Huntington, VT, for Petitioner.

*Robert Coleman*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION GRANTING AWARD OF ATTORNEY'S FEES AND COSTS[1]

On May 11, 2012, K.L. filed this action seeking compensation under the National Vaccine Injury Compensation Program (the "Program").[2] ECF No. 1, dated May 11, 2012 (Original Petition); ECF No. 24, dated Mar. 11, 2013 (Amended Petition). Petitioner alleged that she suffered a variety of injuries (including partial onset epilepsy, seizures, and migraine headaches) as a result of the human papillomavirus ("HPV") vaccinations she received between May 2009 and February 2010. *Id.* at 1. After a hearing was held on September 27, 2016, I issued a decision denying

---

[1] Although this Decision has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id*.

[2] The National Vaccine Injury Compensation Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. § 300aa-10 through 34 (2012)). For purposes of brevity, all subsequent references to sections of the Act herein shall omit the 42 U.S.C. §§ 300aa prefix.

entitlement on March 17, 2017. *See* Decision, dated Mar. 17, 2017 (ECF No. 119). Petitioner subsequently filed a motion for review to the Court of Federal Claims, but that appeal was denied. *See* Judge Vaccine Order/Opinion, dated August 8, 2017 (ECF No. 129)("Appeal Dec.").

On January 30, 2018, Petitioner moved for a final award of Attorney's Fees and Costs. See Motion for Attorney's Fees and Costs, dated Jan. 30, 2018 (ECF No. 133) ("Fees App."). Petitioner requests reimbursement of attorney's fees and costs in the total amount of $154,097.00 (representing $127,861.00 in attorney's fees, plus $26,236.00 in costs). *Id.* at 5. In addition, in accordance with General Order No. 9, Petitioner indicated that she incurred $2,000 in costs related to the matter. *Id.* at Ex. 5. Respondent filed a document reacting to the fees request on February 6, 2018, stating that he is satisfied that the statutory requirements for an award of attorney's fees and costs are met in this case, but deferring to my discretion the determination of the amount to be awarded. ECF No. 134 at 2-3. Petitioner filed her reply on February 13, 2018, arguing that because Respondent did not articulate any specific objections to her request, the total amount should be awarded without reduction. *See generally* Reply to Motion for Attorney's Fees and Costs, dated Feb. 13, 2018 (ECF No. 135).

For the reasons stated below, I hereby **GRANT IN PART** Petitioner's Motion, awarding at this time interim fees and costs in the total amount of **$143,395.30.**

I.   **Procedural History**

This action was filed nearly six years ago, on May 11, 2012. It took over a year for all the medical records to be filed, and a Rule 4(c) Report was submitted by Respondent on June 10, 2013. An additional year passed while Petitioner attempted to obtain an expert opinion, during which time the case was transferred to me. Shortly after Petitioner filed her expert report on June 20, 2014, Petitioner requested an interim award of attorney's fees and costs. *See* Motion for Interim Attorney's Fees and Costs, dated Sept. 24, 2014 (ECF No. 57)("First Mot."). On December 8, 2014, I issued a decision denying Petitioner's request for an interim award of attorney's fees and costs. *See* Decision Denying Motion for Attorney's Fees and Costs, dated Dec. 8, 2014 (ECF No. 63)("Interim Fees Dec.").[3]

Thereafter, Petitioner filed a motion to redact my interim fees decision, which I ultimately granted—after a motion for reconsideration and review. ECF Nos. 69, 70. The parties also continued

---

[3] At the time the motion was filed, the case had persisted for about two and a half years, which Petitioner argued was a sufficient amount of time to warrant an interim award of attorney's fees and costs. *See generally* First Mot. While two and a half years can be considered long enough to award some attorney's fees and costs, I determined that the case had progressed slowly primarily based on Petitioner's own conduct, and an interim award was otherwise not warranted. Interim Fees Dec. at 7-8.

to file additional documents, including medical records and expert reports to complete the record. I determined that an entitlement hearing would be necessary, and scheduled the hearing for September 27, 2016. *See* Prehearing Order, dated Oct. 13, 2015 (ECF No. 88).

The hearing was held as scheduled, despite an issue that arose with Petitioner's expert (requiring her testimony to come via a video conference). Shortly after the hearing was held, I ordered the parties to file a joint status report regarding an award of interim fees, and set a deadline for the filing of simultaneous post-hearing briefs. *See* Scheduling Order, dated Oct. 17, 2016 (docket entry). While the post-hearing briefs were filed as ordered, Petitioner failed to timely file a request for interim attorney's fees and costs. I issued a Decision denying entitlement on March 17, 2017. *See* Decision, dated Mar. 17, 2017 (ECF No. 119). Petitioner filed a motion for review of my decision, which was denied on August 8, 2017. *See generally* Appeal Dec. The present motion was filed about six months later and is now ripe for consideration.

## ANALYSIS

### I.     Legal Standard Applicable to Interim Fees and Costs Requests

I have in prior decisions set forth at length the relevant legal standards governing attorney's fees awards in unsuccessful cases, and in particular the criteria to be applied when determining if a claim possessed "reasonable basis."[4] *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906 at 4-5 (Fed. Cl. Spec. Mstr. May 26, 2016) *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner must demonstrate reasonable basis through some evidentiary showing and in light of the totality of the circumstances. The nature and extent of an attorney's investigation into the claim's underpinnings, both before and after filing is a relevant consideration. *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)).

The fees and costs request must also be "reasonable." Section 15(e)(1). It is for the special master to evaluate and decide whether this is the case. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). To this end, special

---

[4] Although good faith is one of the two criteria that an unsuccessful petitioner requesting a fees award must satisfy, it is an easily-met one – and Respondent does not appear to question it in this case. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (in the absence of evidence of bad faith, special master was justified in presuming the existence of good faith).

masters have discretion in determining what a reasonable fees award is, and may reduce hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Perreira*, 27 Fed. Cl. at 34 (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

The special master is not obligated to evaluate a fees application on a line-by-line basis. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993) (approving the special master's elimination of 50 percent of the hours claimed); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728–29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction in the number of hours from 515.3 hours to 240 hours); *Edgar v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 506 (1994) (affirming the special master's awarding only fifty-eight percent of the numbers of hours for which compensation was sought). Rather (as the United States Supreme Court instructs) when awarding attorney's fees special masters may use estimates to achieve "rough justice." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

Determining the appropriate amount of a fees award is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down. *Avera*, 515 F.3d at 1348. This standard for calculating a fee award is considered applicable in most cases where a fees award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429-37 (1983).

An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera*, 515 F.3d at 1349; *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for rev. den'd*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum in which the relevant court sits (Washington, DC); except where an attorney's work was not performed in the forum and there is a substantial difference in rates. *Avera*, 515 F.3d at 1348. This is the *Davis* exception to the forum rule, which applies if the bulk of the attorney's work was performed outside of Washington, DC, in a location where prevailing rates are substantially lower than the forum rate. *Avera*, 515 F.3d at 1349 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

After the hourly rate is determined, the reasonableness of the total hours expended must be considered. *Sabella*, 86 Fed. Cl. at 205-06. This inquiry mandates consideration of the work

performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley*, 461 U.S. at 434, 437. Evaluating an attorney's fees application involves more than the mere performance of a mathematical calculation. In all stages of the lodestar calculation, I must determine if the fees applicant has established the reasonableness of the billing rate and work performed. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) ("[i]t remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero").

Petitioners bear the same reasonableness burden in seeking an award of costs. *Perreira*, 27 Fed. Cl. at 34; *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002). When petitioners fail to carry this burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005). This practice is consistent with how the Federal Circuit and the Court of Federal Claims (the courts responsible for reviewing the decisions of special masters) have interpreted other federal fee-shifting statutes. *See Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 404 (Fed. Cir. 1987) (interpreting the Equal Access to Justice Act); *Presault*, 52 Fed. Cl. at 679 (interpreting the Uniform Relocation Assistance and Land Acquisition Policies Act of 1970).

## II.     This Case had Reasonable Basis

Based on my review of the facts alleged in the case, coupled with the history of counsel's representation of Petitioner as set forth in the billing records, I conclude that this case maintained reasonable basis despite my determination that compensation was not appropriate. Petitioner presented medical literature and expert testimony that proposed a theory that was plausible, although after weighing the evidence I did not find that Petitioner had proven that her condition was more likely than not due to her vaccines. In addition, Respondent did not challenge reasonable basis, stating that he "is satisfied the statutory requirement for an award of attorney's fees and costs are met in the case." ECF No. 134 at 2. Accordingly, I find that the claim had reasonable basis throughout the course of the case, and so fees may be awarded.

## III.    Amount Requested by Petitioner's Attorney

Petitioner asks that Mr. Paul Dannenberg be compensated at a rate of $265 per hour for work performed from 2010 to 2014, and $275 per hour for all subsequent work. I have found that Mr. Dannenberg (who practices in Huntington, Vermont) is not "in-forum," and thus not entitled to the forum rates set forth in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). I have also issued several decisions determining Mr. Dannenberg's proper hourly rate. *See e.g., Bailey v. Sec'y of Health & Human Servs.*, No. 15-574V,

2017 WL 6759187 (Fed. Cl. Spec. Mstr. Dec. 6, 2017); *Glaser v. Sec'y of Health & Human Servs.*, No. 06-764V, 2016 WL 4491493, at *7 (Fed. Cl. Spec. Mstr. June 6, 2016), *vacated on other grounds*, 2016 WL 4483022 (Fed. Cl. Spec. Mstr. June 29, 2016).

 Petitioner does not request that I deviate from my past fees decisions with respect to Mr. Dannenberg, except asks that I modify upward the rates I awarded in *Bailey* and *Glaser* ($225-$244 for 2008-2016), because they were based on the rate ($200 per hour) established in *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99–533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), but failed to consider the proper upward adjustment for inflation. Petitioner seems to argue that the hourly rate from *Hocraffer* should be adjusted using the Consumer Price Index (CPI) calculator *plus* a $25 "experience adjustment." It is unclear how Petitioner calculated the "experience adjustment," however, as she cites to no cases that use a flat rate adjustment, nor do I find it an appropriate measure of inflation. Fees App. at 4. The special masters currently favor using the producer price index for the office of lawyers ("PPI-OL")—and in fact it was used in *Bailey* as the rate inflator, rather than the CPI.[5] I will continue to follow the rates I awarded in *Bailey* and *Glaser*, but I will use the PPI-OL to determine the rate for 2018. In addition, I will award an additional amount of $15 to Mr. Dannenberg's 2016-2018 requested hourly rates to account for his effective representation in this case and his increased experience in the Program.

 The second issue presented by Petitioner's Fees Application is whether all of Mr. Dannenberg's time billed to this matter should be included in the fees award. I find that it should (except as discussed below). As noted above, the matter was reasonably disputed by and large, even though the claim did not succeed. The time devoted to the matter (which included two motions for review, and which persisted over five years) was appropriate and should be compensated.

 Petitioner requests that her counsel be reimbursed for 470.6 hours of work. *See generally* Fees App., Exhibit 3. After performing a tally of the hours listed on Exhibit Three of the fees application, my total came to 485.9 hours—a difference of 15.3 hours from Petitioner's request. While it was not explicitly stated in Petitioner's application for fees and costs, it appears that she may have reduced Mr. Dannenberg's hours because of my instructions in a prior order—reluctantly

---

[5] If I were to use the PPI-OL to increase Mr. Dannenberg's $200 hourly rate established in *Hocraffer*, it would in many years result in a <u>reduction</u> of the hourly rate he was awarded in *Bailey* and *Glaser*. The special masters have found the PPI-OL to be a persuasive as a measure of inflation. *See OSM Attorneys' Forum Hourly Rate Fee Schedules 2017*, United States Court of Federal Claims, http://www.uscfc.uscourts.gov/node/2914 (last accessed Mar. 6, 2018). The PPI-OL rate for 2009 was derived by multiplying Mr. Dannenberg's 2008 rate, consistent with *Hocraffer*, of $200 by the PPI-OL index for January 2008 (159.9) and then dividing by the PPI-OL index for January 2007 (151.7), after rounding to the nearest dollar, the hourly rate for 2009 came to $211, lower than the $225 I awarded in *Glaser*. I repeated this calculation using the PPI-OL index chart resulting in the following rates; 2010-$218, 2011-$224, 2012-$233, 2013-$240, 2014-$245, 2015-$254, 2016-$260, 2017-$267, 2018-$275. If however, the PPI-OL is used to adjust Mr. Dannenberg's 2010 *Hocraffer* rate of $200, the resulting rates are less or within $5 of what he has been awarded in *Bailey* and *Glaser*.

allowing Petitioner to file late evidence after hearing, despite its availability far sooner, but stating that Petitioner would not be reimbursed for the time relating to the dilatory filing.[6] *See* Order Granting Motion for Leave to File, dated Nov. 21, 2016 (ECF No. 117). My review of the billing records finds that the total hours spent acquiring the late evidence was around 12.5 hours, which is very close to the discrepancy (15.3 hours) between my calculation of Mr. Dannenberg's total time spent on the matter and Petitioner's calculation. I will thus award the amount I have calculated to be correct (485.9 hours) with a 15.3 hour reduction (the time I previously indicated would be disallowed). The reduction will be from Mr. Dannenberg's 2016 hours, because that is the time period I instructed Petitioner to reduce.

| Year | Requested Hourly Rate | New Hourly Rate | Hours Billed | Yearly Total |
|------|----------------------|-----------------|--------------|--------------|
| 2010 | $265 | $225 | 2.0 | $450.00 |
| 2011 | $265 | $225 | 6.8 | $1,530.00 |
| 2012 | $265 | $230 | 35.2 | $8,096.00 |
| 2013 | $265 | $233 | 40.1 | $9,343.30 |
| 2014 | $265 | $237 | 73.0 | $17,301.00 |
| 2015 | $275 | $237 | 85.0 | $20,145.00 |
| 2016 | $275 | $250 | 125.3 (reduced by 15.3) | $31,325.00 |
| 2017 | $275 | $260 | 89.5 | $23,270.00 |
| 2018 | $275 | $270 | 13.7 | $3,699.00 |
| | | | | **Grand Total: $115,159.30** |

### IV. Mr. Dannenberg and Petitioner's Costs

Mr. Dannenberg also seeks reimbursement of $26,236.00 in costs, reflecting copying, telephone charges, postage, travel expenses, as well as expert costs paid by counsel. Petitioner's expert, Dr. Beatrice Engstrand, billed for 33 hours at a rate of $400 per hour—plus a flat initial review fee of $3,500.00, and three hours billed at $500 per hour for her time testifying at the hearing. Fees App., Ex. 4 at 2-3. Accounting for Dr. Engstrand's travel expenses and the time she spent reviewing the case, the total amount requested is $20,900.00. Fees App. at 5. Respondent identifies no objection to these costs, and I have not ascertained any instances in which a cost specifically

---

[6] Five weeks after the hearing, Petitioner filed a motion requesting leave to file additional materials in support of her claim. *See* Motion, dated Nov. 4, 2016 (ECF No. 113). The materials were various pieces of medical literature with additional comments from Petitioner's expert. *Id*. Petitioner argued that her expert had not been able to consider the literature because of an ill family member. *Id*. I granted the motion, although I admonished Petitioner because it appeared that the literature (from 2011) was available to Petitioner's expert far in advance of the hearing and Petitioner exhibited dilatory behavior by waiting to file the literature. *See* Order Granting Motion for Leave to File, dated Nov. 21, 2016 (ECF No. 117). Given the above, I instructed Petitioner that I would not allow her to "recover any attorney's fees or costs associated with either the drafting Dr. Engstrand's affidavit, the collection of these pieces of literature, or the preparation or filing of the motion." *Id*. at 2.

associated with the performance of attorney tasks was improper. Accordingly, I hereby award in full these requested costs. I will also award Petitioner $2,000.00 for the costs she advanced to her attorney. Fees App., Ex. 5.

## CONCLUSION

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of attorney's fees and costs awards, and based on the foregoing, I **GRANT IN PART** Petitioner's Motion for Attorney's Fees and Costs, awarding the following fees and costs:

|  | Requested | Reduction | Awarded |
|---|---|---|---|
| Attorney's Fees | $127,861.00 | $12,701.70 | $115,159.30 |
| Attorney's Costs | $26,236.00 | $0.00 | $26,236.00 |
| Petitioner's Costs | $2,000.00 | $0.00 | $2,000.00 |
|  | | Total Reduction: $12,701.70 | **Grand Total: $143,395.30** |

An award of $141,395.30 in fees and costs should be made in a check payable jointly to Petitioner and Petitioner's counsel, Paul Dannenberg, Esq. A check for $2,000.00 shall also be made payable to Petitioner for the costs she personally incurred in the matter. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[7]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.